Hey, please, the Court. My name is Gilbert Studdy. I represent Virginia Carey. I'd like to reserve five minutes of rebuttal, and I'd like to thank the Court for accommodating my current travel restrictions. You're very welcome, and your request is granted. There were three factors that motivated and inspired my decision to move to suppress data mine from Virginia Carey's cell phone. First, the observation in the footnote by this Court in United States v. Caesar that they had not reached and might reach a different result than they reached in Caesar if they were dealing with evidence derived from the suspect's statements elicited in violation of Edwards v. Arizona, where the suspect invoked his right to an attorney or right to remain silent. That was on the fruit-of-the-poisonous-tree issue. Secondly, I would say respectfully that I don't think the facts of this case can be teed up much better for the defendant. First of all, they're on video. I know the Court has a copy of that video, but there's really no dispute as to what happened here, and there's really no nuance or shade of gray involved in what happened here. And the third motivating factor is when you compare the facts of my case to the facts in United States v. Patain, which is a five-to-four decision on the fruit-of- the-poisonous-tree doctrine, my facts are so much more severe and cry out so much more for a deterrence than the facts presented in Patain. Counsel, can I ask you, because one of the issues we decide is which of these issues we reach, and what's the logical order that we need to address them. And so I want to start with a question just about inevitable discovery here, because the District Court seemed to reason that even assuming the statement's testimonial, even assuming that there's an Edwards violation, that the suppression motion would be denied because what the contents of the phone would have been inevitably discovered in any event. You acknowledge that argument coming up in the background section of your brief, but there's nothing about it in the argument in your brief. The government makes a point about inevitable discovery as an independent basis for decision here, and I don't believe a reply brief was filed. Under those circumstances, why do we need to reach the Edwards issue, the question of whether it's testimonial, the question of whether there wasn't an Edwards violation at all? The reason it's not mentioned in my brief, Your Honor, is there's nothing in the record that supports inevitable discovery in this case. The interview took place in June of 2018. The month is not important. The year is, if we're going to talk about technology. In response to my motion to suppress, and you have a copy of the government's answer, the government took the position that a hearing was not necessary. So to the extent there was a hearing, it was basically argument, and Judge Hillman had a copy of the video of the interview, but the government did not present testimony or evidence that the Atlantic City Police in June of 2018 had the technology to crack open this iPhone if Ms. Curry refused to consent and give up her passcode. So there's just nothing in the record that supports the conclusion that this would have been inevitably discovered, and that's why it's not covered in my brief. It's not in the record. You're taking issue with the consent to search and with the password in connection with that consent. Do you dispute that there was, had they gone to get a search warrant, that there was probable cause at that point for a search warrant of the contents of the phone? I would dispute that if the search, well, even before they cracked, before they opened the phone or after they opened the phone, because they did get a search warrant for a flip phone after they opened the phone, but it was tainted by what they learned when they opened up the cell phone. But they could have gotten the search warrant, but that doesn't answer the question, Your Honor, of whether they had the technology to crack open the iPhone if Ms. Curry did not give up the passcode. And again, there's nothing in the record to suggest that they did. Government chose not to present testimony, took the position that a hearing wasn't even necessary. So how could you find that by independent means the Atlantic City Police Department could have cracked open this iPhone? Let's put aside inevitable discovery for the moment. You've spoken to us about the Edwards violation and the fruit of the poisonous tree doctrine. Can we even reach the question of there being an Edwards violation if we don't first determine that the statements in question were testimonial? I think they were testimonial, at least the giving up of the passcode. I mean, testimonial is often referred to as the difference between physical characteristics and actual words. I understand your argument that they were testimonial. I'm asking you about kind of the decision tree here and whether we need to make a determination about whether the statements were testimonial before reaching the fruit of the don't have an Edwards violation. We don't need to think about fruit of the poisonous tree, right? Can we assume that the statements are testimonial for purposes of addressing the fruit of the poisonous tree doctrine, or would that run afoul of constitutional avoidance? Well, when you say the statements, I'm talking about her writing down her password as testimonial because it's revealing the contents of her mind. And it's also an admission that she has ownership of that cell phone. So I think writing down, to the extent that being testimonial is important, writing down the passcode is, in my view, testimonial. But I guess I understand Judge Cross's question would be, does it matter? Because what you're asking for is an extension of the exclusionary rule to an Edwards violation in circumstances where it would not apply to a Miranda violation. And so does it make any difference whether this was testimonial or not as a matter of the law? Because we still have a constitution. We have constitutional questions no matter how we look at this. What is the grounds for extending a remedy in Edwards that has not been extended in Miranda? How would that even work? Well, I would circle back to the decision in Patain, Your Honor, because it's a five to four decision. And in the majority, there's constant reference to the fact that you're dealing with a mere failure to warn issue, which is also the issue this court had in DeSumma. What we have here is, to go back to Caesar, is not just a request for counsel and the refusal to waive Edwards' violation on steroids, Your Honor. And my question is, if these facts had been presented in Patain, which was a five four decision, would the result have been different? Because this is not a mere failure to warn case. As a matter of fact, ironically, Patain is not even a mere failure to warn case because Patain involved someone who told the police he didn't need to hear his rights because he knew them. So the facts are so much stronger. And when you get eventually to the question of deterrence, which is where the Supreme Court ended up in Patain by saying, with respect to failures to warn, there is nothing to deter. What requires more deterrence than a situation where a person says, I want my lawyer here. I'm not going to waive my rights. And the police simply ignore what she just said in a coercive atmosphere to begin with. But we're talking here about prophylactic rules for the Fifth Amendment and where the Supreme Court has repeatedly characterized Edwards as not just prophylactic directly, but on top of the prophylactic rule of Miranda, if the fruit of the poison's tree doctrine is not going to apply to Miranda, isn't it, no pun intended, but isn't it a foregone conclusion that it's not going to apply to an Edwards violation? I think an Edwards violation is more serious than a simple Miranda violation, Your Honor. We're not talking about failure to warn. We're not talking about ignoring a decision not to waive Miranda. We're talking about a request for counsel. I can't think of anything more important in the Miranda warnings than a request for counsel. At that point, most assuredly, questioning is supposed to stop until a lawyer is presented. If a lawyer is appointed or presented, as a matter of fact, you and Judge Restrepo just dealt with this issue back in April, which was the prime example of what should happen, where a guy flunked a life. In fact, he said he wanted his lawyer. The police said, we're going to try and get him for you, get him for you. The assistant district attorney tried reaching him and they eventually reached him. In this case, they didn't even skip a beat, they just went from, okay, check off the box, you're not waiving your rights. And the detective shuffled his papers for two or three seconds and then said, okay, will you consent to a search of your cell phone? If this is not a case for deterrence, for a violation of Miranda and Edwards, then there never will be, because they didn't pay lip service at all to Curry's request with the man that her lawyer would be present. So the consequence of that is that the direct statements can't be introduced, right? As would be the case with the Miranda violation. But what about that would trigger Fruit of the Poisonous Tree doctrine when it doesn't apply to Miranda violations? Because this court was leaning in that direction and the Supreme Court was leaning in that except you were dealing with a failure to warn and here you're dealing with the failure to honor demand for a lawyer. It's a much different category. I mean, if you were to put these in boxes of bad, worse, worse, bad is failure to warn, worse is ignoring a request for a lawyer and ignoring a refusal to waive Miranda rights. Is there any authority after Petain for applying the Fruit of the Poisonous Tree doctrine to Edwards violations? I mean, isn't all the authority since that time going the other way so that if we agreed with you, we'd be creating a pretty lopsided circuit split? That would be correct, Your Honor. This is an issue this court left open and now you have a chance to decide what do you do about the fact that you have an Edwards violation on steroids. If we step back for a moment to the question of the statements being testimonial, you argued in your brief that the consent to search was itself testimonial. You haven't focused on that in your argument. Do you concede that consent to search itself is not testimonial? I suppose I have to, although it is revealing the contents of her brain. I suppose that I would have to concede that because I'm more focused on the password than the consent to search. And with the password, I mean, district court here was reasoning that that's just a means to effectuate consent. What's wrong with that view of the voluntary sharing of a password? And let's assume for these purposes that it is voluntary and not coercive. Well, it is coercive, Your Honor, because number one- Let's assume for these purposes that it's voluntary. It's a separate set of questions put to Ms. Carey, just as she had refused to consent to a search of her cell phone. She said she did not want to give up the passcode. So they were treated separately by the police. And I understand Judge Hillman's thinking on that, but he also addressed what would happen if it was a separate issue. And I think it is a separate question in the setting where they're not supposed to be asking her any questions. So in terms of any meaning, any assertion of fact or belief that's attached to the password, is there anything to it in this case beyond ownership and control of the phone? Just the very fact that she has to write it down requires her, as this court has said in the Apple Macintosh case, I know I just said that wrong. And the Supreme Court said, indeed, she's revealing the contents of her mind. When she writes down the passcode, she's revealing the contents of her mind. Whether that's written, oral or otherwise, that makes it testimonial. Does the foregone conclusion doctrine apply to the sharing of a password where the police already know that the person in question owns and controls the phone? I would say no, because it's not simply knowing that she owns the phone and probably has information on her phone. It all always circles back to what they could do if she doesn't surrender the password. And in this record, the answer is nothing. Okay. Thank you. We'll circle back to you on rebuttal and we'll hear from Ms. DiTillo. Good morning, Your Honors. May it please the court, Jane DiTillo on behalf of the United States. This case can be resolved with a straightforward application of Petain and Edwards. My opposing counsel has attempted to distinguish that line of cases, Petain in particular, in two ways. Number one, that Edwards, as a context, is different. But for purposes of applying the Fruits Doctrine, it is not. Both Edwards and Miranda are procedural safeguards, as Your Honor recognized in your questioning, designed to protect the underlying constitutional right to not have your compelled statements used against you at trial. So in that way, they serve the same function and they're both judge-made procedural laws. Is there a difference in Edwards in that there's an affirmative request for counsel? I'm sorry. I'm sorry. Isn't Edwards a little bit different in that there's an affirmative request for counsel is then ignored? So yes, it's the request for counsel is different than the failure to give a warning, but that difference does not affect the reasoning applied in Petain for why the Fruits Doctrine does not apply to violations of Miranda. So the reason that the Fruits Doctrine does not apply to violations of Miranda and Edwards as well is that those are procedural safeguards that are than the underlying constitutional right. And the Supreme Court has not applied the Fruits Doctrine, has not suppressed reliable physical evidence where there was not a violation of an underlying constitutional right. And whenever the suppression remedy is applied, the Supreme Court has acknowledged over and over again that there has to be a rigorous cost-benefit analysis and any incremental deterrent value, even if there were some incremental deterrent value, would not outweigh the social costs of applying the exclusionary rule as a deterrent on top of a deterrent, which is what you would be doing if you applied the Fruits Doctrine to Edwards. You know, turning to the facts of this... Yeah, I just want to confirm, the government didn't make use of any of the direct evidence that was obtained, arguably, in violation of Edwards? That's right. It self-suppressed the provision of the passcode and the consent to search. So, it only used the digital evidence that was extracted from the phone. So, you know, turning to sort of the facts of this case, opposing counsel's argument that this was coercive is foreclosed by Judge Hillman's finding that the defendant voluntarily provided consent and voluntarily provided her passcode. Does a violation of Edwards raise just a presumption of coerciveness? It does, yes, Your Honor. But the Supreme Court has acknowledged that Edwards is, in fact, sweeps more broadly, as does Miranda, than the underlying constitutional right. So, that presumption will capture some statements that were not actually coerced, and that's what happened here. Judge Hillman made a finding that this statement in this case was not coerced. That doesn't mean that the statement itself wouldn't have to be suppressed under Edwards if it did, indeed, violate Edwards. We argue that it did not, of course, because we take the position that it wasn't testimonial. But if it did, then it would still have to be suppressed under that procedural safeguard. But the doctrine doesn't go any farther than that. It doesn't require suppression of the fruits of the violation of a procedural safeguard, as opposed to the underlying constitutional right. And that's really important. In both Patain and Elstad, and in this case, the statements at issue were voluntary. There was no actual compulsion. There was no actual arguable violation of the underlying right. Should we reach the issue of whether the fruit-of-the-poisonous-tree doctrine applies to Edwards violations without first addressing whether the statements in question are testimonial? And can we consistent with the doctrine of constitutional avoidance? Yes, Your Honor, because I believe that the question of whether the statements are testimonial is also a constitutional question. So, I think both are equally dependent on the analysis of what does the Fifth Amendment mean and what does it require. So, I think that the testimonial question of whether the pass code is testimonial is a bit of a harder question because there's not controlling precedent with respect to the fruits question. We have Patain and we have the controlling precedent requiring that this fruits doctrine does not apply to the violation of a procedural safeguard like we have alleged here. Doesn't Apple Mac Pro already address the question of whether the provision of the password is testimonial? Apple Mac Pro does not decide that. It does say that the act of production, so the in that case that it was actually the decryption, so the act of decryption which necessarily involves using the passcode, drawing on the contents of your mind to use the passcode to decrypt the phone, that that act of decryption does have a testimonial aspect. And we don't dispute that providing a passcode can have producing a passcode can have some act of production testimony. And the testimony inherent implicit in providing the passcode in this case was I know the passcode to this phone. And under certain circumstances that could be testimonial. For example, if the phone was not found on her person, if there were that the government did not already know that it was her phone, that you know you could imagine a situation where that could be the fact that this person knew the passcode could be used or knew the passcode to anything could be used to show that they had possession and control. But it wasn't used in that way in Apple Mac Pro. It was a foregone conclusion in that case that the defendant had access to the encrypted hard drive. And the same reasoning applies in this case because this was an iPhone that was on the defendant's person. Why should we be thinking about this and equating it to active production, testimonial aspects, a foregone conclusion doctrine applying to active production when this wasn't, I mean it would be closer if the police had handed her the phone and said, hey enter your password. She did it and handed back the decrypted phone. But instead they said give us the password. So why isn't that just a traditional statement? And if it's testimonial, it fits into the paradigm of just a standard verbal testimonial statement. That's why this is a new context and I think the answer to your question is why you know passcode has no informational value. It has no meaning outside of its mechanical use to unlock a phone. So whether her passcode is... One could, right? I mean... Theoretically yes. So a passcode could be I sell drugs. It could be you know numbers that are associated with you know a criminal organization or something like that. But that's not the facts of this case. So in the ordinary course, a passcode has no informational value like a testimonial statement would. The contents of the passcode itself. It simply is a key, in other words, a digital key to unlock digital files. The Supreme Court seemed to think with the, I believe it was a plurality, approvingly talking about Justice Stevens' view that numbers, if it was just numbers to open a safe, even the provision of numbers to open a safe would be testimonial. Right. So I think you're referring to the combination lock metaphor that the Supreme Court has used in Hubble. So first of all, that's dicta. There is no combination lock case. And if you follow that line of that metaphor, Hubble cites a footnote in Doe where the Doe majority was basically saying you know the concerns that the dissent has about going into the defendant's thoughts and state of mind are not present when we're having someone sign a consent decree, as was at issue in that case. Because you know this is, it's more like a key than a combination lock. So it didn't say, I think that dicta does not, should not be read to say that a combination, simply a minor use of the contents of someone's mind is render something testimonial. So there again, there is no combination lock case. And I think if the Supreme Court were squarely faced with the question of whether a combination lock actually constitutes, whether a combination to a lock actually constitutes a testimonial statement, I think for the all of the reasons that we've explained or that I've explained, that because it has no informational value beyond its mechanical use, that it is more like signing a dissent decree than it is, you know, giving any other type of information to the government. Where the statement is something that's given verbally, can you point us to any authority that the foregone conclusion doctrine would apply? I cannot off the top of my head, your honor. So this would, and this is a novel circumstance. Surprisingly, there is no combination lock case controlling law on that. There is no passcode case so far. So this would be new territory as far as I know. I can't think of any verbal use, but I would say that verbal statement, I would say that there wasn't a verbal statement here. She wrote, I understand, you know, it's equivalent that she wrote down the passcode. So I think it is analogous to producing documents where, you know, a key or producing indeed... That would strike the active production doctrine well beyond anything we've ever seen, right? I mean, the documents are not something somebody just writes down and hands over. Give me your passcode. Here it is. Oh, now it's a document. So active production doctrine and foregone conclusion. I think all of these tricky waters are the reasons why I understand you going back to saying it doesn't matter because Edwards can't extend. The remnant of the fruit of the poisonous tree doesn't extend this far. Yes. Yes. I do think that is the easiest way to resolve this case. But I just want to push back on the idea that the court hasn't applied the foregone conclusion doctrine to the use of the mind. I think this idea in Apple Mac Pro, the defendant had to decrypt the device, meaning that the defendant had to actually use the passcode. And I understand that Your Honor has made that distinction between actually physically doing the decryption and the passcode, but the effects of those two things are indistinguishable. Apple Mac was a court order, right? It wasn't requiring them to write something down. It was a court order. It was a court order. That's true. And yes, he was not required to write it down, but he was to the extent that there's an argument that the contents of the mind is what distinguishes a passcode from other types of production. I think Apple Mac Pro rejected that by requiring someone to use the contents of their mind to provide hard drives in decrypted form, which necessarily, I believe, would require the use of a password and the use of the contents of his mind. But I agree. Yes. The easiest way to resolve this case without sort of wading into these novel waters is to go back to Patain and say that even if these statements were testimonial, the statements were not used and the fruits of those statements cannot be deterred because they were not the result of a constitutional violation. The outcome would be different, of this was a coerced confession. The outcome may be different, right? So, but here where there was not an underlying constitutional violation, the fruit simply cannot be suppressed. So, you know, I think Edwards and Miranda are the perfect fit for the constitutional harm they seek to avoid. They are both exclusionary rules that prevent the use of statements that are made in violation or are made after violation of the procedural safeguards that are intended to avoid police coercion. And that fits perfectly over the Fifth Amendment's dictate that someone's compelled incriminating statements can't be used against them at trial. The Fifth Amendment does not go farther than that. Should we attach any significance to the Supreme Court's denial of cert in Utah v. Valdez, where the Utah Supreme Court concluded carrying a password testimonial and foregone conclusion doctrine irrelevant? I apologize, Your Honor. I am not familiar with that case. I'm happy to file a letter answering your question as a 28-J type letter. I apologize. But I do think, you know, the fact is the district courts have gone both ways on this. It's a difficult question of whether the pass code is testimonial, at least, you know, as shown by those, the kind of, the different ways that different courts have gone on this question. Can you take a moment and address the question about inevitable discovery? Because if there's no dispute that there was probable cause to get a search warrant, and the only question is, at this point in time, was the technology available to actually discover the contents of the phone? Is it your understanding that that's what the question is as to inevitable discovery? And if so, how was it answered on this record? So I do think that's part of the question as to inevitable discovery. The other part is not only was there probable cause to get the warrant, but would the police have gotten the warrant? And the record is clear that they would have. They got the warrant for the other phone. They still had probable cause, even excising any information that came from the iPhone, which is disputed. And they, you know, this was a case, this was a death results case. The detective who was involved in the interrogation testified at trial that, you know, look, I pulled all of the security cameras, you know, that were in the area in the neighborhood where the victim was found dead, because in this case, we want to look at it from every angle. So yes, that was about pulling the security camera footage, but it showed that this was not, this is not like a vehicle stop where the police may or may not have waited and gotten a warrant. This case, they were doing. Just because you got the warrant, what, how does that tell us that you would have been able to extract the information without corruption, which the district court. Right. So, so yes, I will, I will turn now to the technological capability question. So the, I think the requirement, what the government has to show to establish inevitable discovery is that routine police, by a preponderance of the evidence, that routine police procedures would have inevitably resulted in obtaining that evidence. And it's not there. The requirement is not that it has to show a certainty that the procedures would have resulted in the evidence. And I think the authority for that is Nix v. Whiteside. But let me stop before I'm here. There's zero, I mean, zero on the record suggesting that AC police department in 2018 had the wherewithal to get into this phone. You would agree with that? There's nothing on the record other than the arguments. But I would agree that there is some record basis that, you know, you have the government's, you have the video itself where the police detective tells her, we will hook it up and get your phone. And then you have on top of that corroborating that you have the AUSA's representation. I spoke to that detective. He believed that at the time that that was true. He believed he had a, he had a machine that could magically open the phone and that's enough. That he believed that they could break into the phone. Yes, she made that. But not without corruption. I understand saying they could have gotten into the phone. The question is, can they get the information that they want the same way? Yes. And then she further proffered, you know, in my experience, in my experience, this is something that law enforcement can do. They can get, and she disagreed with the court's, you know, evidence. That's not evidence. That's not evidence. I do think that the court can, to some extent, rely on a proffer of the prosecutor's personal experience to the extent that it corroborates some record evidence. If this court is dissatisfied with that evidence and with the quantum of evidence, I think it could remand or amplification of that point on the record. But I think that there is some record support for the idea that the government could have gotten into that phone. And again, in Nixvy-Whiteside, the Supreme Court said that, you know, found inevitable discovery applied, where there was a volunteer search team that was two and a half miles away from the body. So there's no way that the Supreme Court could have known or that the lower courts who made the inevitability finding could have known that a search, that there wouldn't be human error, that the search team absolutely would have found that body. And I think that just goes to show that standard is not certainty under inevitable discovery doctrine in terms of whether the routine police procedures would have absolutely obtained that evidence. But this court need not, again, reach the inevitable discovery point. I do think that the easiest way to resolve this case is, again, going back to the Fruits Doctrine, because the government did not use the statement that's allegedly testimonial in its case. It did not use it at trial. So the Fifth Amendment was not violated. If anything was violated, it was the procedural safeguard. And that doesn't justify suppressing that evidence, the physical evidence that came from that. So that is definitely the cleanest way and clearest way to resolve this case. If the court has no further questions, we ask that you affirm the decision below. Thank you. If I may very briefly, Your Honors. Yes. In the appellant's appendix, starting on page 85 and going on to about page 89, there is the conversation between Judge Hillman and the prosecutor about the ability of the that the prosecutor did an admirable job to answer the question honestly, but never really answered it, assuming that her answer would have been evidence anyway, and it was just argument. She was really more tethered to what federal agents in the year 2021 could do than what the Atlantic City Police in the year 2018 could do. So I disagree that a remand would be appropriate. The government took the position that a hearing was not necessary. They then chose not to present any evidence or testimony on this issue. So I don't see how they can now attempt to rely on the inevitable discovery doctrine. That's all I have, unless the court has any other questions. Okay. All right. We thank both counsel for their patience sitting through a long morning of argument and for the excellent argument that we've received just now. We will take this case and the others we've heard today under advisement.